UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BO ZHANG,                                                            **REPORT AND**
                                                                     **RECOMMENDATION**
                              Plaintiff,
                                                                     12-CV-00721(S)(M)
v.

NORTH COUNTY BEAUTIFICATION
COMPANY, INC. d/b/a "NCBC UNITED
STATES INVESTMENT COMPANY",
DANIEL R. LUCARIELLO and
SI SI GE,

                              Defendants.
_____

        This case has been referred to me by Hon. William M. Skretny for supervision of

pretrial proceedings, including the preparation of a Report and Recommendation on dispositive

motions [13].[1]  Before me is defendants' motion [40] for partial summary judgment dismissing

Counts One, Two, Three, Four and Seven of plaintiffs' Complaint.[2]  For the following reasons, I

recommend that the motion be granted in part and denied in part.


                                   **BACKGROUND**

        In this diversity action plaintiff Bo Zhang, a citizen of the People's Republic of

China, "seeks damages from intentionally fraudulent and deceptive conduct related to

Defendants' unauthorized practice of law, false representations as to their qualifications to

provide immigration services, and their converting $180,000 paid for participation in

_____

        [1]        Bracketed references to CM/ECF docket entries.

        [2]        Plaintiff had previously moved for leave to belatedly cross-move for summary judgment
[43]. I denied that motion for lack of good cause [45].

Defendants' investment immigration program. Plaintiff also seeks statutory and compensatory

damages for unlawful discrimination practices against Plaintiff on the account of his national

origin and immigration status."  Plaintiff's Memorandum of Law [51], p. 1.

Plaintiff's Complaint [1] alleges seven causes of action ("Counts"), five of which

are the subject of this motion.[3]  The relevant facts are discussed only to the extent necessary to

address the issues raised by the motion.


## ANALYSIS

**A.**     **Summary Judgment Standard**

"The standards governing summary judgment are well-settled. Summary judgment

is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law.  The party seeking summary

judgment has the burden to demonstrate that no genuine issue of material fact exists.  In

determining whether a genuine issue of material fact exists, a court must examine the evidence in

the light most favorable to, and draw all inferences in favor of, the non-movant.  Summary

judgment is improper if there is any evidence in the record that could reasonably support the

jury's verdict for the non-moving party." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

However, "[w]hen the moving party has carried its burden . . . its opponent must

do more than simply show that there is some metaphysical doubt as to the material facts . . . .

---

[3]          The motion does not seek to dismiss plaintiff's claims for conversion (Count Five) or
common law fraud (Count Six).

[T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial* . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Electric Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986) (emphasis in original). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

**B.      Count One: New York City Immigration Assistance Services Law**

Count One of the Complaint alleges that defendants violated the New York City Immigration Assistance Services Law (New York City Administrative Code, Title 20, Chapter 5, Subchapter 14) ("NYCIASL"). Section 20-771 of NYCIASL prohibits certain conduct by those rendering "immigration assistance services", which, in turn, is defined as "providing any form of assistance, in the city of New York, for a fee or other compensation, to persons who have come, or plan to come to the United States from a foreign country, or their representatives, in relation to any proceeding, filing or action affecting the non-immigrant, immigrant or citizenship status of a person, which arises under the immigration and nationality law, executive order or presidential proclamation, or which arises under actions or regulations of the United States citizenship and immigration services, the United States department of labor, or the United States department of state". §20-770(a).

In moving to dismiss this claim, defendants argue that "there is no evidence that any 'immigration assistance services' . . . were provided to Plaintiff by Defendants at anytime

during the brief period that [the parties] were present in New York City . . . .  At most,

Defendants provided menial services (*i.e.*, picking Plaintiff and his family up at the airport and

arranging a place for them to stay . . . but those services are certainly not services 'in relation to

any proceeding, filing or action affecting the non-immigrant, immigrant or citizen ship status of a

person,' as required by the statute." Defendants' Memorandum of Law [42], p. 4.

   Plaintiff responds that defendants "offered Plaintiff a package of services which

cannot be separated . . . .  As part of the package, the Defendants drove from Dunkirk to New

York City to pick up Mr. Zhang and his family from John F. Kennedy International Airport in

New York City.  Then, the Defendants arranged for accommodations within the five boroughs of

New York City for Plaintiff and his family to become acclimated to the United States. The

Defendants then led the plaintiff and his family on a shopping trip in New York City as part of

their 'New American Life' package.  As Defendants have unequivocally testified, the services the

Defendants claimed to have performed in New York City are part and parcel with their assistance

and advice with respect to obtaining a travel visa and green card in the United States."  Plaintiff's

Memorandum of Law [51], pp. 13-14.

   Plaintiff contends that "[i]t is . . . undisputed that the services the Defendants

provided within New York City are inextricable, and directly related, to the services they

provided outside of New York City, including advising Plaintiff regarding his immigration

status.  Accordingly, Defendants cannot seek to charge Plaintiff for an indivisible package of

services, and now attempt to escape New York City jurisdiction by claiming that their service

package can be divided between non-immigration services in New York City and immigration

services outside of New York City."  Id., p. 15.

"Interpretations of statutes are pure questions of law."  United States v. Williams 733 F.3d 448, 452 (2d Cir. 2013).  "In determining the meaning of [a] statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy."  Crandon v. United States, 494 U.S. 152, 158 (1990).  Section 1 of NYCIASL, entitled " Declaration of legislative findings and intent", states that "[g]iven the size of New York City's immigrant community, providers of immigration assistance services have a significant impact on cultural, social and economic life in this city".  This strongly suggests that the statute's aim is to protect immigrants having a significant relationship with the city, not those whose activities are only tangentially and temporarily related to the city - particularly where no immigration-related activities occur within the city.  "[T]he fair meaning of the language used must not be unduly stretched for the purpose of reaching any particular case."  United States v. St. Anthony Railroad Co., 192 U.S. 524, 533 (1904). "We  . . . avoid constructions that produce odd or absurd results or that are inconsistent with common sense."  Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority, 539 F.3d 199, 210 (3d Cir. 2008).

Even if there were any ambiguity in the statute (and I find none), it would be resolved in favor of defendants, since the statute has not only civil but penal consequences.[4]  See Crandon, 494 U.S. at 158 ("because the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage"); Dunn v. United States, 442 U.S. 100, 112 (1979) (courts must "resolv[e] questions

---

[4]      Section 20-777(a)(1) provides that any violation of its provisions is a class A misdemeanor.

concerning the ambit of a criminal statute in favor of lenity . . . . This practice reflects not merely

a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of

due process which mandate that no individual be forced to speculate . . . whether his conduct is

prohibited").

   Since I find no evidence of activities performed by defendants within the City of

New York which could reasonably be interpreted as "immigration assistance services" as defined

in NYCIASL, I recommend that Count One of the Complaint be dismissed.


**C.  Count Two: N.Y. General Business Law §349**

   Count Two of the Complaint alleges that defendants engaged in deceptive acts

and practices in violation of New York General Business Law ("GBL") §349.  "[P]arties

claiming the benefit of the section must, at the threshold, charge conduct that is consumer

oriented.  The conduct need not be repetitive or recurring but defendant's acts or practices must

have a broad impact on consumers at large; private contract disputes unique to the parties would

not fall within the ambit of the statute."  New York University v. Continental Insurance Co., 87

N.Y.2d 308, 320 (1995).

   In moving to dismiss this claim, defendants argue that it "arises out of a private

dispute, unique to the parties, and not conduct which affects the consuming public at large".

Defendants' Memorandum of Law [42], p. 5 (emphasis in original).  "The 'package of services'

that Defendants provided to Plaintiff was unique to him and was specifically designed around

Plaintiff's expressed a desire to come to the United States and purchase a vacation home."

Defendants' Reply Memorandum of Law [52], p. 5.[5]

Because the program at issue was specifically designed for plaintiff, it does not fall within the scope of GBL §349.  *See* <u>New York University</u>, 87 N.Y.2d at 321 ("Plaintiff has not met the threshold requirement because defendants' acts in selling this policy and handling the claim under it do not constitute consumer-oriented conduct . . . . The policy was not a standard policy, although it contained standard provisions, but was tailored to meet the purchaser's wishes and requirements").

Accordingly, I recommend that Count Two of the Complaint be dismissed.

**D.      Count Three: N.Y. Human Rights  Law (Executive Law) §296**

Count Three of the Complaint alleges that defendants violated N.Y. Executive Law §296(2), which prohibits certain discriminatory practices by "the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement".  Defendants' sole argument for dismissal of this claim is that "the term 'immigration service provider' is nowhere to be found in the exhaustive definition of 'place of public accommodation, resort or amusement' . . . . <u>See</u> N.Y. Exec. Law §292(9).  Accordingly, the statute is inapplicable as a matter of law".  Defendants' Memorandum of Law [42], p. 7.

---

[5]      Defendant Lucariello testified that he "designed this around [plaintiff's] desire which was to come to the United states, purchase the vacation home. He wanted to have his vehicle set up in his garage, he wanted to have all of his clothes, a house that was completely furnished. He wouldn't even need to bring any suitcase the next time he came.  He wanted to be set up, that was his American life . . . . We talked abut it together.  It was like his desire to have this American small-town feel. What he wanted, he was like . . .  I want to have a rural house with a truck."  Lucariello deposition [51-22], pp. 86, 87.

However, Executive Law §292(9) does not "exhaustively define" the phrase "place of public accommodation, resort or amusement".  Instead, its "broad and inclusive language" lists examples which are intended to be "illustrative, not specific".  Cahill v. Rosa, 89 N.Y.2d 14, 21 (1996); United States Power Squadrons v. State Human Rights Appeal Board, 59 N.Y.2d 401, 409 (1983). That list includes the phrase "wholesale and retail stores and establishments dealing with goods or services of any kind". "[T]he statute generally applies to 'establishments' of any kind, implicitly interpreting that phrase as separate from and not modified or limited by the phrase 'wholesale and retail'".  Cahill, 89 N.Y.2d at 21.  "[T]he Legislature used the phrase place of public accommodation 'in the broad sense of providing conveniences and services to the public' and . . . intended that the definition of place of accommodation should be interpreted liberally." Id.; Power Squadrons, 59 N.Y. 2d at 410.

Since the fact that the statute does not specifically mention "immigration service provider" is not fatal to Count Three of the Complaint, I recommend that this Count not be dismissed.


**E.      Count Four: New York City Human Rights  Law**

Count Four of the Complaint alleges that defendants unlawfully discriminated against plaintiff in violation of §8-107 of the New York City Human Rights Law (New York City Administrative Code, Title 8, Chapter 1).  "When a non-resident seeks to invoke the coverage of the New York City . . . human rights law[ ], he or she must show that the alleged discrimination occurred within New York City." Rylott-Rooney v. Alitalia-Linee Aeree Italiane-Societa Per Azioni, 549 F.Supp.2d 549, 551 (S.D.N.Y. 2008).

In moving to dismiss Count Four, defendants argue that "there is no evidence of any discrimination occurring at any point during Plaintiff's brief stay in New York City, where he spent time sleeping, getting over jet lag and shopping with family and friends, before moving onto Dunkirk".  Defendants' Memorandum of Law [42], p. 8.  Plaintiff responds that defendants "provided Plaintiff and his family with an all-inclusive service package (*i.e.*, one that cannot be divided *a la carte*) which included immigration assistance services, transportation and accommodation within New York City, interpreting English within New York City and guiding Plaintiff and his family through New York City shopping on Fifth Avenue."  Plaintiff's Memorandum of Law [51], p. 21.

However, for reasons previously discussed in connection with Count One of the Complaint, there is no evidence in the record suggesting that defendants unlawfully discriminated against plaintiff in the City of New York.  Therefore, I recommend that Count Four of the Complaint be dismissed.

**F.      Count Seven: Intentional Infliction of Mental Trauma and Distress**

Count Seven of the Complaint seeks to recover for plaintiff's mental trauma and distress intentionally caused by defendants. In moving to dismiss this claim, defendants argue that the record contains no evidence to support the elements of that cause of action.  Defendant's Memorandum of Law [42], Point V.  Plaintiff responds that "[s]ince mental anguish is relevant to the State and City Human Rights Law claims, Plaintiff need not make a separate claim for intentional infliction of emotional distress, and does not seek to prove it as an independent tort."  Plaintiff's Memorandum of Law [51], p. 24.

Accordingly, I recommend that Count Seven of the Complaint be dismissed.

**CONCLUSION**

For these reasons, I recommend that defendants' motion [40] be granted to the extent that it seeks dismissal of Counts One, Two, Four and Seven of the Complaint, but denied to the extent that it seeks dismissal of Count Three.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by March 9, 2015 (applying the time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge".  Failure to comply with these

provisions may result in the district judge's refusal to consider the objections.


Dated: February 20, 2015


                                     /s/ Jeremiah J. McCarthy
                                    JEREMIAH J. MCCARTHY
                                    United States Magistrate Judge