UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BO ZHANG,                                       12-CV-721-WMS-MJR
                                                REPORT AND RECOMMENDATIONS
                    Plaintiff,

        -v-

NORTH COUNTY BEAUTIFICATION
    COMPANY, INC. d/b/a NCBC United
    States Investment Company,
DANIEL R. LUCARIELLO, and
SI SI GE,

                    Defendants.
_____

        This case has been referred to the undersigned for all pre-trial matters, including

the preparation of a report and recommendation on dispositive motions.  (Dkt. No. 79).

Before the Court is plaintiff Bo Zhang's motion for default judgment against defendant

North County Beautification Company, Inc. ("NCBC").  (Dkt. No. 87).  For the following

reasons, it is recommended that the motion be granted in part and denied in part.

## BACKGROUND

        Bo Zhang, a citizen of the People's Republic of China who resides in Beijing,

commenced this action in 2012 against defendants NCBC, Daniel Lucariello, and Si Si

Ge (collectively, the "defendants").  (Dkt. No. 1).  Zhang's Complaint asserts a number

of common law and statutory claims against the defendants, alleging that they operated

an unlawful immigration assistance program that scammed him out of at least $180,000.

The following background facts are taken from the pleadings and motion papers filed in

this action.

NCBC is a New York corporation that conducts business in Chautauqua County, New York.  (*Id.* ¶¶3-4).  Lucariello, a Chinese-speaking American citizen, is alleged to be the sole shareholder and executive officer of NCBC.  (*Id.* ¶¶4, 93).  Lucariello and his wife, Ge, a Chinese national, marketed and promoted NCBC as a full-service investor immigration assistance company whose principal business was to assist Chinese nationals in preparing EB-5 applications, arranging their investments for qualifying U.S. commercial enterprises, and managing the commercial enterprises.  (*Id.* ¶¶6, 17).

Between May 2011 and February 2012, the defendants advised Zhang that they could help him and his family attain permanent residency in the United States under the U.S. Citizenship and Immigration Services investment immigration program, commonly referred to as the EB-5 program.  (*Id.* ¶10; Dkt. No. 89 ¶3).  Zhang and his wife reviewed a Chinese-language multimedia presentation and literature prepared by the defendants that described their immigration and real estate services.  (Dkt. No. 89 ¶4). The presentation represented that ownership of property in the United States would undeniably help Zhang and his family obtain green cards.  (*Id.*).  Thereafter, Lucariello and Ge traveled to China to persuade Zhang and his wife to utilize their services.  (*Id.*). After several in-person meetings, telephone calls, and internet messages, Zhang and his wife and young son traveled to New York and met with the defendants in order to apply for green cards.  (*Id.*).  Lucariello and Ge advised Zhang that in order to begin processing his immigration application, he had to make an advance payment to their company, NCBC, in the amount of $180,000.  (*Id.* ¶5).  Because Zhang did not speak, read, or write English, the defendants accompanied him to a local bank to help him open a bank account and transfer funds from China to the account.  (*Id.*).  The

defendants then instructed Zhang to write out a check payable to NCBC for $180,000, which Zhang presented to the defendants on October 21, 2011.  (*Id.*).

To complete his family's green card application, the defendants instructed Zhang to return to China to gather additional documentation.  (*Id.* ¶6).  While in China, Zhang visited with a company that specializes in EB-5 applications.  (*Id.* ¶7).  The company's representatives gave Zhang information regarding the EB-5 program that varied dramatically from the advice that he had received from the defendants.  (*Id.*).  When Zhang questioned the defendants about the conflicting information he received in China, they sent him a Chinese-language brochure on NCBC letterhead explaining that the defendants were familiar with a technical loophole that would guarantee the success of his green card application.  (*Id.*).  On January 12, 2012, Zhang returned to the United States with the documents requested by the defendants.  (*Id.* ¶8).  The defendants demanded that Zhang give them additional funds to complete his family's green card applications, at which point Zhang started to suspect that he and his family were the victims of a fraudulent scam.  (*Id.*).

On February 2, 2012, Zhang's wife gave birth to their second child, after which Zhang's extended family came to the United States to visit.  (*Id.* ¶9).  While his family was visiting, Zhang contacted an immigration attorney experienced in the EB-5 program, who advised Zhang that information within NCBC's brochure was false and misleading.  (*Id.*).  Zhang then demanded that the defendants return his $180,000 payment, but they refused, falsely stating that the funds were for the purchase of a home.  (*Id.*).  Zhang never signed an agreement to purchase a home, nor does he hold title to any home in New York.  (*Id.*).  According to Zhang, the revelation that he had

been scammed by the defendants occurred while he was hosting his extended family, causing him to endure significant shame and embarrassment in front of his family members, who expressed their dismay with his belief that the defendants were a legitimate company.  (*Id.* ¶10).

After Zhang's extended family returned to China, the defendants sent Zhang emails threatening to report him and his family to the authorities for deportation.  (*Id.* ¶11).  The defendants also threatened to harm Zhang's family if he did not forego his claim for the return of the advance payment.  (*Id.*).  Fearing for his family's safety, Zhang returned to China.  (*Id.*).

Zhang commenced this action in 2012, after which the defendants filed an amended answer with counterclaims.  (Dkt. Nos. 1, 24).  After discovery, the defendants moved for partial summary judgment on Zhang's complaint.  In February 2015, the Hon. Jeremiah J. McCarthy (the Magistrate Judge initially assigned to this action) issued a Report and Recommendation recommending dismissal of four of Zhang's eight claims.  (Dkt. No. 58 at 10).  Hon. William M.  Skretny adopted the Report and Recommendation in its entirety.  (Dkt. No. 61).  Zhang's four surviving claims are for fraud, violations of the New York State Human Rights Law ("HRL"), N.Y. Exec. Law §296(2), conversion, and civil conspiracy.

On July 28, 2015, after Judge Skretny adopted Judge McCarthy's Report and Recommendation, defense counsel moved to withdraw.  Judge McCarthy granted the motion, but in doing so, advised NCBC that because it is a corporation, it may not represent itself in this action.  (Dkt. No. 72).  Judge McCarthy gave NCBC until September 18, 2015 to retain an attorney.  (*Id.*).  He later extended this deadline to

October 22, 2015, but warned NCBC that if it did not obtain new counsel by that date, he would entertain a motion for default judgment.  (Dkt. No. 74).

At a status conference held on October 22, 2015, the defendants informed Judge McCarthy that they had retained new counsel.  (Dkt. No. 76).  However, because defense counsel did not file a notice of appearance, Judge McCarthy advised the defendants that he would entertain a motion for default judgment against NCBC unless its counsel filed a notice of appearance by November 6, 2015.  (*Id.*).  No notice of appearance was filed by that date.  Thus, at Zhang's request, the Clerk of Court entered default against NCBC on November 12, 2015.  (Dkt. No. 78).[1]

On March 11, 2016, Zhang filed the present motion for default judgment against NCBC, serving the motion on NCBC at its last known address.  (Dkt. Nos. 87-90).  The Court set a briefing schedule on Zhang's motion, but to date, NCBC has neither appeared by counsel nor opposed the motion.  Zhang's motion requests default judgment on his remaining causes of action for fraud, violations of the HRL, conversion, and civil conspiracy.  Zhang seeks damages for his $180,000 payment to NCBC, $3,000 in costs he incurred traveling to and from China to obtain documents requested by NCBC, $20,000 in emotional distress damages, and $180,000 in punitive damages. Zhang also requests dismissal of NCBC's answer and counterclaims.

### DISCUSSION

Fed.R.Civ.P. ("Rule") 55 sets forth a two-step process for obtaining a default judgment.  Under the first step, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Rule 55(a).  Where, as

---

[1]    On January 27, 2016, counsel appeared for defendant Ge, but not NCBC.  (Dkt. No. 83).

here, a corporate defendant fails to appear by counsel, entry of default is appropriate. *Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) ("[I]t is settled law that a corporation cannot appear other than by its attorney."); *SEC v. Research Automation Corp.*, 521 F.2d 585, 589 (2d Cir. 1975) ("[W]here a corporation repeatedly fails to appear by counsel, a default judgment may be entered against it pursuant to Rule 55 . . . .").

Under the second step, the plaintiff may apply to the Court for a default judgment.   Rule 55(b)(2).   In reviewing a motion for default judgment, the Court must determine whether the complaint states a claim for relief as to each cause of action for which the plaintiff seeks default judgment.   *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F.Supp.2d 150, 153 (E.D.N.Y. 2010).   For purposes of this analysis, allegations concerning liability, but not damages, are deemed admitted.   *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).   After liability is established, the Court determines the amount of damages.   Although the Court may hold a hearing on damages, a hearing is not required when the plaintiff's documentation provides a sufficient basis to award damages.   *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993) (holding that the Court may fix damages based on "detailed affidavits and documentary evidence, supplemented by [its] personal knowledge of the record") (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

I.       *Liability*

A. *Fraud*

A fraud claim requires the plaintiff to allege "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). Fraud must be pleaded "with particularity." Rule 9(b). This heightened pleading standard places two requirements on the plaintiff. First, the plaintiff must plead the circumstances of the fraud, meaning he must "(1) detail the statements (or omissions) that [he] contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Loreley Fin.*, 797 F.3d at 171 (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)). Second, the plaintiff must plead facts "that give rise to a strong inference of fraudulent intent." *Id.* (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006)). Zhang adequately alleges common law fraud with the particularity required by Rule 9(b).

Zhang alleges that NCBC's marketing materials, which are attached to his complaint, misrepresented, among other things, NCBC's qualifications and expertise to provide immigration services as well as the application process and success rate for the EB-5 program. (Dkt. No. 1 ¶84; Dkt. No. 1-1; Dkt. No. 1-2). NCBC allegedly knew that its representations were false because it was entirely unqualified to provide immigration services to Zhang and other members of the public. (Dkt. No. 1 ¶¶3-5, 85, 89). Similarly, NCBC's intent to deceive Zhang may be inferred from its clear lack of

experience and training in immigration matters.  (*Id*.); *see M&T Mortg. Corp. v. White*, 736 F.Supp.2d 538, 565 (E.D.N.Y. 2010) (holding that a strong inference of fraudulent intent may arise from the defendant's knowledge of the falsity of its representations). Zhang has also adequately alleged that he reasonably relied on NCBC's misrepresentations.   "In assessing whether reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." *J.P. Morgan Chase Bank v. Winnick*, 350 F.Supp.2d 393, 406 (S.D.N.Y. 2004).   Zhang was not at all sophisticated regarding immigration matters, since he did not speak English and lacked familiarity with the U.S. legal system and its immigration laws.  (Dkt. No. 1 ¶38).  To compare, NCBC represented that it was experienced in immigration services and that it had successfully assisted other Chinese immigrants.  (*Id*.).  NCBC's marketing materials were sophisticated, describing complicated U.S. immigration standards in Mandarin Chinese.  (*Id.* ¶¶18, 21; Dkt. No. 1-1; Dkt. No. 1-2).  Based on the entire context of Zhang's and NCBC's transaction, their relationship was very much uneven, making Zhang's reliance on NCBC's misrepresentations reasonable.  Finally, Zhang alleges that NCBC's fraud caused him to suffer at least $180,000 in damages.  (Dkt. No. 1 ¶36). Therefore, Zhang has pleaded fraud with particularity, and it is recommended that default judgment be granted on this claim.

B. *HRL Claim*

HRL §296(2) makes it unlawful for an owner, employee, or agent of "any place of public accommodation, resort or amusement . . . to refuse, withhold from or deny to

such person any of the accommodations, advantages, facilities or privileges thereof" because of his national origin.  N.Y. Exec. Law §296(2)(a).  Targeting a protected class of individuals (in this case, Chinese nationals) for mistreatment based on their protected status violates the HRL.  *See Romano v. SLS Residential Inc.*, 246 F.R.D. 432, 441 (S.D.N.Y. 2007); *Barkley v. Olympia Mortg. Co.*, No. 04CV875(RJD)(KAM), 2007 WL 2437810, at *13-18 (E.D.N.Y. Aug. 22, 2007) (allegations that defendants intentionally targeted minority homebuyers and sought to lure them into fraudulent transactions adequately stated HRL claim).

Here, Zhang plausibly alleges that NCBC, an immigration service provider, is a "place of public accommodation, resort or amusement" under §296(2) (*see* Dkt. No. 58 at 8), and that it violated the statute when the defendants preyed on him and other Chinese nationals based on their inability to speak English and their unfamiliarity with U.S. law (Dkt. No. 1 ¶¶10, 16-24, 38, 46).  Therefore, it is recommended that the Court grant Zhang default judgment on his HRL claim.

C. *Conversion*

"[C]onversion is the unauthorized assumption and exercise of the right of ownership of goods belonging to another to the exclusion of the owner's rights."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995)).  Money may be the subject of a conversion claim if it is specifically identifiable and subject to an obligation to be returned or otherwise treated in a particular manner.  *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F.Supp. 3d 363, 370 (S.D.N.Y. 2014).  The $180,000 payment from Zhang to NCBC constitutes "specifically identifiable" funds, as the payment is alleged to have

been an advance payment for the benefit of a green card application under the EB-5 program.  (*Id.* ¶¶36, 77).   Zhang alleges that NCBC had no claim to this payment until he authorized it to apply for a green card, and that he never provided such authorization to NCBC or the other defendants.  (*Id.* ¶79).  After Zhang concluded that NCBC was perpetrating a fraud, he demanded that NCBC return his payment, but NCBC refused. (*Id.* ¶¶42, 82).  These allegations state a conversion claim, and it is recommended that default judgment be granted against NCBC on that claim.

D. *Civil Conspiracy*

To state a civil conspiracy claim, the plaintiff must plead an underlying tort as well as facts supporting the following elements:  "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012) (quoting *Abacus Fed. Sav. Bank v. Lim*, 75 A.D.3d 472, 474 (1st Dep't 2010)).  As discussed, Zhang had pleaded two tort claims against NCBC — fraud and conversion.  The remaining elements of Zhang's conspiracy claim are satisfied because he has pleaded facts to support an inference that NCBC, Lucariello, and Ge had an agreement to bilk him out of $180,000, that they distributed fraudulent marketing materials in furtherance of this agreement, and that he suffered at least $180,000 in damages as a result of the defendants' unlawful scheme.   Therefore, it is recommended that default judgment be granted against NCBC on this claim.

II.   *Damages*

As noted, a damages hearing is not required when the party moving for default judgment submits documentation supporting his alleged damages.  *Tamarin*, 13 F.3d at 54.  Zhang's declaration and the documents attached thereto provide a sufficient basis to determine the fairness and amount of his requested damages.  Thus, in lieu of a hearing, the Court will determine Zhang's damages on the papers.

A.  *$180,000 Payment*

Zhang's request for $180,000 in compensatory damages is sufficiently supported by a copy of the cancelled check payable to NCBC and his testimony that NCBC refused to return any portion of this payment.  (Dkt. No. 89 at 7; *id.* ¶12(a)).  Thus, it is recommended that the Court award Zhang $180,000, with prejudgment interest on this sum at the rate of nine percent per year, from October 21, 2011 to the date of judgment. *See* N.Y. C.P.L.R. 5001, 5004; *Koch v. Rodenstock*, No. 06 Civ. 6586(BSJ)(DF), 2012 WL 5844187, at *10-11 (S.D.N.Y. May 9, 2012) (in diversity action, applying New York law to award plaintiff prejudgment interest on his compensatory damages at the rate of nine percent per year), *report and recommendation adopted*, 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012).

B.  *Travel Expenses*

Zhang claims to have spent $3,000 traveling between the United States and China to gather documents requested by NCBC.  Zhang has not, however, submitted any documentation reflecting his travel costs, nor has he explained exactly what the costs consist of.  Therefore, it is recommended that this part of Zhang's damages request be denied.  *Koch*, 2012 WL 5844187, at *10 (denying request for transportation

costs because, other than a general statement in his affidavit, the plaintiff failed to provide any support for the costs).

### C. *Emotional Distress Damages*

A default judgment may include emotional distress damages.  *See Najnin v. Dollar Mountain, Inc.*, No. 14cv5758, 2015 WL 6125436, at *3 (S.D.N.Y. Sept. 25, 2015); *Poliard v. Saintilus Day Care Ctr., Inc.*, No. 11 CV 5174(MKB)(LB), 2013 WL 1346238, at *6-7 (E.D.N.Y. Mar. 7, 2013), *report and recommendation adopted*, 2013 WL 1346398 (E.D.N.Y. Apr. 2, 2013).   "Garden variety" emotional distress that is unsupported by medical evidence and is devoid of any extraordinary circumstances merits an award in the range of $5,000 to $35,000.  *See Najnin*, 2015 WL 6125436, at *3.

In support of his emotional distress damages, Zhang contends that NCBC's actions caused him to suffer "shame and embarrassment in front of [his] extended family members" and a "tremendous loss of [his] reputation, which . . . still lingers to this date."  (Dkt. No. 89 ¶10).   Zhang also experienced fear on account of the threats made by the defendants against his family.  (*Id.* ¶11).   Zhang has not, however, provided any medical evidence or other information to support his emotional distress, and the Court finds that his emotional distress claim is devoid of extraordinary circumstances.   Thus, Zhang's emotional distress damages are on the low end of the spectrum, and it is recommended that the Court award him $10,000.  *See Poliard*, 2013 WL 1346238, at *6-7 (awarding plaintiff $10,000 for her emotional distress, pain, and humiliation because her distress did not require medical treatment).

D. *Punitive Damages*

Punitive damages may be awarded as part of a default judgment.  *See Miller v. Levin*, 02 Civ. 0353(KMW)(KNF), 2002 U.S. Dist. LEXIS 21108, at *12 (S.D.N.Y. Oct. 30, 2002) ("Where a party has defaulted on a common law fraud claim, an award of punitive damages is permissible."); *see also Koch*, 2012 WL 5844187, at *11-12.  "[I]n order to state a claim for punitive damages, a claimant must allege conduct which is 'aimed at the public generally,' involves 'a fraud evincing a high degree of moral turpitude[,]' and demonstrates 'such wanton dishonesty as to imply criminal indifference to civil obligations.'"  *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (quoting *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (1994)).

Punitive damages are warranted here because NCBC is alleged to have preyed on Zhang and other Chinese nationals due to their unfamiliarity with immigration law and their desire for U.S. citizenship.  (Dkt. No. 1 ¶¶10, 16-24, 38, 46).  The Court finds that this alleged fraudulent misconduct, which targeted the public, evinces a high degree of moral turpitude.  A punitive damages award in an amount equal to Zhang's compensatory damages is therefore appropriate.  *See Koch*, 2012 WL 5844187, at *12 (awarding plaintiff punitive damages in an amount equal to his $311,486.90 compensatory damages award).  Thus, it is recommended that the Court award Zhang $180,000 in punitive damages.

E. *Dismissal of Answer and Counterclaims*

When a default judgment is entered against the defendant, its answer and counterclaims, if any, should be stricken.  *See Eagle Assocs. v. Bank of Montreal*, 926

F.2d 1305 (2d Cir. 1991); *Next Proteins, Inc. v. Distinct Beverages, Inc.*, No. 09 CV 4534(DRH)(ETB), 2012 WL 314871, at *2 (E.D.N.Y. Feb. 1, 2012).   Therefore, it is recommended that the Court dismiss NCBC's answer and counterclaims.

## CONCLUSION

It is recommended that Zhang's motion for default judgment (Dkt. No. 87) be granted in part and denied in part.   Specifically, Zhang should be awarded default judgment against NCBC as follows:   (1) $180,000 in compensatory damages, with prejudgment interest on this sum at the rate of nine percent per year, from October 21, 2011 to the date of judgment, (2) $10,000 in emotional distress damages, and (3) $180,000 in punitive damages. It is further recommended that the Court dismiss NCBC's answer and counterclaims.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72.   Any requests for an extension of this deadline must be made to Judge Skretny.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

DATED:      May 5, 2016
            Buffalo, New York

/s/ Michael J. Roemer
MICHAEL J. ROEMER
United States Magistrate Judge