UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BO ZHANG**,<br><br>                              Plaintiff,<br><br>-v-<br><br>**NORTH COUNTY BEAUTIFICATION COMPANY, INC.**, d/b/a NCBC United States Investment Company, **DANIEL R. LUCARIELLO**, and **SI SI GE**,<br><br>                              Defendants. | Case No. **12-CV-721-WMS-MJR**<br><br>**PLAINTIFF BO ZHANG'S MOTION IN LIMINE NO. 1**<br><br>**TO PRECLUDE ANY EVIDENCE, TESTIMONY, ARGUMENT, REFERENCE AND/OR SUGGESTION OF EVIDENCE CONCERNING FACTUAL ISSUES WHICH WERE FULLY AND FINALLY ADJUDICATED IN THE DEFAULT JUDGEMENT ENTERED ON JUNE 3, 2016 AGAINST DEFENDANT NORTH AMERICAN BEAUTIFICATION COMPANY, INC.**<br><br>[*A Proposed Order Granting Motion in Limine No. I is being submitted concurrent herewith*]<br><br>Pretrial Conference:  July 25, 2016<br>Time: 2:30 PM<br><br>Jury Selection:  July 26, 2016<br>Time 9:30 AM<br><br>Trial Date:  July 27, 2016<br>Time: |

**TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiff Bo Zhang will and does here by move this Court, *in limine*, for an order precluding Defendant Daniel R. Lucariello and Defendant Si Si Ge, and/or their attorneys, experts, and lay witnesses from offering any evidence or testimony at trial, or making any argument, reference or suggestion at trial in any pertaining to way to the following facts and issues which were addressed and fully and finally adjudicated in Default Judgment

entered on June 3, 2016 against Defendant North County Beautification Company, Inc., d/b/a NCBC United States Investment Company, a true and correct copy of which [Document (DOC) 94], together with and true and correct copy of the Magistrate's "Report and Recommendations", dated May 5, 2016 [DOC 92], which was "ACCEPTED {CAPS in original)", are attached and collectively marked Attachment "A" and incorporated herein by this reference.

This motion *in limine* is made under and in keeping with this Court's "inherent power to manage the course of trials", *Luce v. United States*, 469 US 38, 41, 105 S.Ct. 460, 463, fn. 4 (1984); *United States v. Holmquist*, 36 F3d 154, 163 (1st Cir. 1994) and is well recognized in both practice and case law. See, *Ohler v. United States*, 529 US 753, 758, 120 S.Ct. 1851, 1854 & fn. 3 (2000); *Padillas v. Stork-Gamco, Inc.* 186 F3d 412, 417; (3rd Cir. 1999) *United States v. Cook*, 608 F2d 1175, 1186 (9th Cir. 1979)

This motion is based upon the ground that these factual "issues" have been previously heard and decided [DOC 94] and are therefore precluded from re-litigation under the doctrines of *res judicata* and judicial estoppel.

This motion is further based on the supporting memorandum of law, the pleadings, papers, this Court's prior orders and default judgment, the declaration of Leodis C. Matthews, admitted to this Court *pro hac vice*, and upon such arguments and additional evidence as may be presented either prior to or at the hearing of this instant motion.

Alternatively, if this Court should, for any reason decline to exclude any or all of the requested evidence identified herein, Plaintiff Bo Zhang respectfully requests a Rule 104(a) hearing.

/ / / /

/ / / /

DATED: July 16, 2016

                                  Respectfully submitted,

                                  ZHONG LUN LAW FIRM LLP
                                  Attorneys for Plaintiff BO ZHANG


                            By:    */S/ Leodis C. Matthews*
                                   LEODIS C. MATTEWS

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF' MOTION IN LIMINE NO. 1

**I.      THERE IS A NEED FOR THIS MOTION TO BE GRANTED**

It is anticipated, and highly likely, that Defendants Daniel R. Lucariello [Lucariello] and Defendant Si Si Ge [Ge] will seek to admit exculpatory evidence in an attempt to establish that neither Lucariello nor Ge are in any way liable for the damages Plaintiff Bo Zhang [Zhang] suffered as a result their actions as alleged in his complaint.  For the reasons set forth below, any such evidence, any testimony regarding such evidence, any suggestion of such evidence, and any inferences that may be attempted to be drawn from such evidence is strictly prohibited and precluded under the doctrines of res judicata and judicial estoppel.

**II.     PLAINTIFF'S STATEMENT OF FACTS**

Plaintiff Bo Zhang [Zhang] originally brought this action collectively against Defendants North County Beautification Company, Inc. d/b/a "NCBC United States Investment Company, [NCBC], and the individuals Daniel R. Lucariello [Lucariello] and Si Si Ge [Ge] on July 31, 2012. Zhang, a non-English speaking citizen and resident of the People's Republic of China [China], alleges the individually named Defendants, Lucariello and Ge, a married couple, conspired to use the husband's corporate shell, NCBC, as the vehicle through which they operated an unlawful, unaccredited, unlicensed immigration assistance program.  The evidence will show that: (a) Lucariello and Ge were not qualified, and that not one of the named Defendants were legally permitted, to provide professional advice and representation on immigration law; (b) in conducting their fraudulent, immigration scam, Defendants sought out and almost exclusively preyed upon nonresident, non-English speaking Chinese nationals, and, through the use of brochures, multimedia and PowerPoint™ presentations, all prepared in Mandarin, and social media, as well as in-person sales pitches presented to their target groups in China, convinced and otherwise

cajoled these members of their targeted class, including Zhang, to accept the Defendants' offer to represent and assist them in obtaining a "Green Card" under the U.S. Citizenship and Immigration Services' "Immigrant Investor Program" (more commonly known as the "EB-5" program) for a "Package Price".

**III.   CAUSES OF ACTION AT ISSUE**

The following causes of action are presently before this Court as they relate to the liability of both Lucariello and Ge for the damages sustained and incurred by Zhang as a direct and proximate result of the willful misconduct and tortious actions of these defendants.

1.  Violations of the New York State Human Rights Law, section 296, based on Zhang's national origin, Ref. Complaint, Document [DOC] 1, Count Three, Paras. 68-71;

2.  Conversion, Ref. Complaint, DOC 1, Count Five, Paras. 76-82;

3.  Common Law Fraud, Ref. Complaint DOC 1, Count 6, Paras. 83-90; and

4.  Civil Conspiracy, Ref. Complaint, DOC 1, 1, Count 8, Paras. 99-103.

**IV.   ADDITIONAL BASES FOR THE LIABILITY OF LUCARIELLO AND GE**

   **A.   LUCARIELLO**

Lucariello is also subject to individually and personal liability for all of Zhang's damages under:

(a) the New York law which imposed personal liability on a corporate officer for the torts and wrongful committed by the corporation which he participated in; *See*, 15 N.Y.Jur.2d, Business Relationships, §§ 1076, 1086, *Clark v. Pine Hill Homes, Inc*., 112 A.D. 2d 755, 429 N.Y.S.2d 253, 254 (1985); and

(b) the equitable Alter Ego Doctrine which imposes liability on a corporate officer if his or her domination of the corporation led to the corporation's misconduct or tortious actions. *See*,

*James v Loran Realty V Corp.*, 20 NY.3d 918, 956 NYS.2d 482, 980 NE.2d 532 (2012); *TNS Holdings, Inc. v MKI Securities Corp.*, 92 NY.2d 335, 680 NYS2.d 891, 703 NE.and 2d 749 (1998)

### B. GE

Ge is also subject to individual and personal liability for all of Zhang's damages on the ground she was acting in the capacity of an agent of NCBC, with the apparent authority to so act and, irrespective of contractual relationship that she may or may not have had with NCBC she was nevertheless bound under "the common-law obligation that every person must act or use what he or she controls as not to injure another", 2A N.Y. Jur.2d *Agency and Independent Contractors: Effect of Agency Relationships on Agent's Tort Liability* § 337 (2008). *See*, 3 Am. Jur.2d *Agency: Tort Liability* § 298 (2008) ["From the standpoint of one injured by the wrongful act of another, the status of the wrongdoer as a principal or agent is immaterial"]; *See also*, *Dorkin v. Am. Express Co.,* 74 Misc. 2d 673, 345 N.Y.S.2d 891, 893 (N.Y. Sup. Ct., 1973) [when his or her actions fall within one of the categories of tort or contract liability an agent may be found liable for actions taken on behalf of the principal]; *Rusyniak v. Gensini*, 629 F. Supp.2d. 203, 223. *Fn.4* (NDNY 2008)

### V. THE DEFAULT JUDGMENT ENTERED AGAINST NCBC

In accepting and adopting the Report and Recommendations of U.S. Magistrate Judge Michael J. Roemer, the Court entered a default judgment against NCBC, and in favor of Zhang, and awarded Zhang "$180,000 in compensatory damages, with prejudgment interest at the 9% per year from October 21, 201l, to date of judgment $10,000 in emotional distress compensatory damages; and $180,000 in punitive damages". In addition, the Court further ordered that those

portions of the operative Answer and Counterclaim filed by the collective Defendants "that pertain to (NCBC be) STRICKEN". Attachment "A". DOC 94 [1]/

## VI. ARGUMENT

### A. THE DEFAULT JUDGMENT ESTABLISHED ALL THE PRIMA FACIE ELEMENT OF ALL FOUR CAUSES OF ACTION

The findings of fact and conclusions of law made in the Magistrate's Report and Recommendations, which were adopted by this Court and incorporated by reference in its judgment, Attachment "A", DOC 92:5-15 & DOC 94, established that all of the prima facie elements of the four causes of action (Violations of the New York State Human Rights Law, Common Law Fraud, Conversion, and Conspiracy) had been established, as a matter of law, and that NCBC was therefore liable for the damages and suffering these wrongful acts caused Zhang.

It is axiomatic NCBC exists as an *incorporeal* business entity. As such, since it is physically incapable of either performing or engaging in the wrongful and tortious acts for was ultimately found liable for all by itself, what could have otherwise remained a metaphysical conundrum has already by resolved by the laws which imparts and imputes the human, contact to the corporation.

As recited in the findings of fact the wrongful and tortious "human conduct" which gave rise to both the factual and legal bases for NCBC's liability, was on the part of "Lucariello and Ge", Attachment "A", DOC 92:2-5.

### B. THE PRECLUSIVE EFFECT OF *RES JUDICATA* APPLIES

In *Saud v. Bank of New York*, 929 F.2d.916, 918-919 (2d Cir. 1991), the Court concluded

---

[1]/ Under Federal Rules of Appellate Procedure 4, the time in which a notice of an appeal of the Court's June 3, 2016 judgment has past; thus rendering a final and binding judgment.

"[u]nder the doctrine of *res judicata*, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in the action' {citation omitted}"; adding "'A judgment of a court having jurisdiction of the parties and the subject matter operates as **res judicata**, in the absence of fraud or collusion, **even if obtained upon default** {emphasis added, citation omitted}'"

In determining whether the default judgment in this case may be given preclusive effect here, the Court stated the proper inquiry begins "'whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether *the facts essential to the second were present in the first* {italics added}". *U.S. v. DiPaolo,* 446 F. Supp.2d 476, 485 (SDNY 2006), citing, *Saud v. Bank of New York*, 929 F.2d. 919 (*Supra.*). The *DiPaolo* Court also reiterated the doctrine of res judicata also "prevents a defendant from raising any new defense to defeat the enforcement of an earlier judgment", citing *Curtis v. Citi Bank, N.A*. 204 Fed.Appx. 929, 930-931; 2006 WL 3253049 at *1 (2d Cir. 2006)

Here, since the liability imposed on NCBC in the default judgment of June 3, 2016 was wholly predicated on the actions and conduct of Lucariello and Ge, and since the liability of Lucariello and Ge, which is to be decided at this trial, is based on the very same facts, the same conduct, and the very same series of transactions which were previously fully and finally adjudicated against their Co-Defendant NCBC, the applicable law governing the preclusive effect of a previously entered default judgment wholly supports Zhang's position that the factual issues listed below, in Section "V", are the proper subject of this motion *in limine*.

    C.    THE PRECLUSIVE EFFECT OF JUDICIAL ESTOPPEL ALSO APPLES

Judicial estoppel applies in "situations where a party both takes a position that is inconsistent with one taken in a prior proceeding and has had that earlier position adopted by the

tribunal to which it was advanced." *Uzdavines v. Weeks Marine, Inc.,* 418 F.3d 138, 148 (2d Cir. 2005) (quoting *Stichting v. Schreiber,* 407 F.3d 34, 45 (2d Cir. 2005)). The later position must be "clearly inconsistent" with the earlier position, and the party must have succeeded in persuading a tribunal to accept that earlier position, *id.* at 147, so that "'the risk of inconsistent results with its impact on judicial integrity is certain.'" *Id.* at 148 (quoting *Simon v. Safelite Glass Corp.,* 128 F.3d 68, 72 (2d Cir. 1997))  See also, *Curtis v. Citi Bank, N.A*. 204 Fed.Appx. 929, 930-931 (*Supra*.) [a defendant is from raising any new defense to defeat the enforcement of an earlier judgment"]

In his "Report and Recommendations", DOC 92, Magistrate Judge Michael J. Roemer advised the parties to be mindful of the following warnings, caveats, and directives:

> "***Failure to file objections, or request an extension of time to file objections, within fourteen days if service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURTS ORDER***.  See *Small v. Sec'y of Health & Human Services,* 892 F.2d 15 (2d Cir. 1989). {italics, emphasis, and CAPS in original}" DOC 92:14

* * *

> "Finally, **the parties are reminded** that, pursuant to Local Rule of Civil Procedure 72(b), written objections 'shall specifically identify the portions of the **proposed finding** and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority. . .'" {emphasis added}

* * *

Under the facts of this case, NCBC's default was entered by the Clerk of the Court on November 12, 2015, DOC 78.  Accordingly, at the time the Magistrate's Report and Recommendation was entered on May 5, 2016 and thereafter served on the parties, the only parties

were Plaintiff Zhang, in whose favor the judgment was entered, and the two remaining Defendants, Lucariello and Ge, whose actions were found to be the basis of NCBC's liability.

Neither Defendant Lucariello nor Defendant Ge availed themselves to the opportunity to raise timely and *appropriate* objections to the findings of fact and conclusions of law made by the Magistrate and, having failed to so do, lost their right to appeal. The Default Judgment has since become a final and binding judgment. Under the holding in *Weeks Marine*, 418 F.3d at 148 (Supra.), since Defendant Lucariello and Defendant Ge did not file objections to the findings of fact and conclusions of law recited in the Magistrate's "Report and Recommendations" when they had the opportunity do so, their continuing attempt to offer a defense against those factual issues which have already been finally adjudicated, and as set forth in Section "V" below, is precluded by the doctrine of judicial estoppel.

## V.  THE FACTUAL ISSUES SUBJECT TO THE PRECLUSIVE EFFECT OF JUDICIAL ESTOPPEL AND/OR *RES JUDICATA* AND SPECIFICALLY INCLUDED IN THIS ARE SET FORTH IMMEDIATELY BELOW

In his proposed, factual findings, which were adopted *in toto* by this Court, Magistrate Judge Michael J. Roemer specifically made the following factual findings in his "Report and Recommendation" which later became the order of the Court and thereafter a part of the final and binding Default Judgment {citations to the docket omitted}:

Ref. Appendix "A", DOC 92:2

1. Ge is the wife of Lucariello
2. Ge is a Chinese National
3. Lucariello and Ge marketed and promoted NCBC as a full-service investor immigration assistance company whose principal business was to assist Chinese nationals in preparing EB-5 applications, arranging their investments for qualifying U.S. commercial enterprises, and managing the commercial enterprises

4. Between May 2011 and February 2012, the defendants advised Zhang that they could help him and his family attain permanent residency in the United States under the U.S. Citizenship and Immigration Services investment immigration program, commonly referred to as the EB-5 program

5. Zhang and his wife reviewed a Chinese-language multimedia presentation and literature prepared by the defendants that described their immigration and real estate services

6. The presentation represented that ownership of property in the United States would undeniably help Zhang and his family obtain green cards.

7. Thereafter, Lucariello and Ge traveled to China to persuade Zhang and his wife to utilize their services.

8. After several in-person meetings, telephone calls, and internet messages, Zhang and his wife and young son traveled to New York and met with the defendants in order to apply for green cards.

9. Lucariello and Ge advised Zhang that in order to begin processing his immigration application, he had to make an advance payment to their company, NCBC, in the amount of $180,000

10. Because Zhang did not speak, read, or write English, the defendants accompanied him to a local bank to help him open a bank account and transfer funds from China to the account

Ref. Appendix "A", DOC 92:3

11. Defendants then instructed Zhang to write out a check payable to NCBC for $180,000

12. Zhang presented the Check to the defendants on October 21, 2011.

13. To complete his family's green card application, the defendants instructed Zhang to return to China to gather additional documentation

14. To complete his family's green card application, the defendants instructed Zhang to return to China to gather additional documentation.

15. While in China, Zhang visited with a company that specializes in EB-5 applications.

16. The company's representatives gave Zhang information regarding the EB-5 program that varied dramatically from the advice that he had received from the defendants
17. When Zhang questioned the defendants about the conflicting information he received in China, they sent him a Chinese-language brochure on NCBC letterhead explaining that the defendants were familiar with a technical loophole that would guarantee the success of his green card application.
18. On January 12, 2012, Zhang returned to the United States with the documents requested by the defendants.
19. The defendants demanded that Zhang give them additional funds to complete his family's green card applications, at which point Zhang started to suspect that he and his family were the victims of a fraudulent scam.
20. On February 2, 2012, Zhang's wife gave birth to their second child, after which Zhang's extended family came to the United States to visit
21. While his family was visiting, Zhang contacted an immigration attorney experienced in the EB-5 program, who advised Zhang that information within NCBC's brochure was false and misleading.
22. Zhang then demanded that the defendants return his $180,000 payment, but they refused, falsely stating that the funds were for the purchase of a home.
23. Zhang never signed an agreement to purchase a home, nor does he hold title to any home in New York.

Ref. Attachment "A", DOC 92:3-4

24. According to Zhang, the revelation that he had been scammed by the defendants occurred while he was hosting his extended family, causing him to endure significant shame and embarrassment in front of his family members, who expressed their dismay with his belief that the defendants were a legitimate company.

Ref. Attachment "A", DOC 92:4

25. After Zhang's extended family returned to China, the defendants sent Zhang emails threatening to report him and his family to the authorities for deportation.
26. The defendants also threatened to harm Zhang's family if he did not forego his claim for the return of the advance payment.
27. Fearing for his family's safety, Zhang returned to China

**28.** Zhang suffered compensatory, economic damages in the amount of $180,000. Ref. Appendix "A", DOC 92:11.II.A

## VI. CONCLUSION

For the reasons set forth above, Plaintiff Bo Zhang is entitled to an order GRANTING his Motion *in Limine* No. 1 on its merits and on the ground the specific factual issues, numbered 1-28, inclusive, set forth in full in Section "V" above, have been previously, fully and finally adjudicated and therefore any attempt by either Defendant Daniel R. Lucariello and/or Defendant Si Si Ge, and/or their attorneys, experts, and/or lay witnesses to introduce or offer any evidence or testimony at trial, or making any argument, reference or suggestion at trial in any pertaining thereto is precluded by the operative effects of the doctrines of *res judicata* and/or judicial estoppel way to the following facts and issues

/ / / /

DATED:       July 16, 2016

                                      Respectfully submitted,

                                      ZHONG LUN LAW FIRM LLP
                                      Attorneys for Plaintiff BO ZHANG

                         By:    */S/ Leodis C. Matthews*
                                LEODIS C. MATTEWS

## DECLARATION OF LEODIS C. MATTHEWS

I, LEODIS C. MATTHEWS, declare:

1. I am a licensed attorney at law entitled to appear before this Court in relation to this case *pro hac vice*. I am a partner of Zhong Lun Law Firm LLP, Plaintiff Bo Zhang attorneys of record. I have been lead counsel in this case since its inception and I have personal knowledge of the files and pleadings in this matter, as well as the facts stated below. If called upon as a witness, I could and would so testify as follows:

2. Plaintiff is seeking an order excluding Defendants, their attorneys, experts and witnesses from offering any evidence or testimony at trial, or making any argument, reference or suggestion at trial of evidence relating or pertaining, directly or indirectly to those specific factual issues, set forth in Section "V" of the Memorandum of Law, and numbered 1 through 28, inclusive, on the ground these factual issues were addressed and fully and finally adjudicated by this Court and therefore subject to the preclusive effect of the doctrines of res judicata and/or judicial estoppel

3. Should this Motion not be granted, not only would Plaintiff suffer irreparable prejudice, I believe this Court would risk the possibility of inconsistent results and, if this were to occur, its impact on judicial integrity is certain.

4. I attempted to meet and confer in good faith with defense counsel prior to filing this motion but despite these attempts I could never reach him and all of my messages have went unreturned.

I declare under penalty of perjury under the laws of United States of America the foregoing is true and correct and that I executed this declaration on July 16, 2016, in Los Angeles.

>             */S/ LEODIS C. MATTHEWS*
>             Declarant